OPINION OF THE COURT
Michael J. Dontzin, J.
Defendant Consolidated Edison of New York (Con Ed) seeks *58 an order pursuant to CPLR 3211 (a) (7) and 3211 (a) (2) dismissing the action brought against it by the Attorney-General of New York. In that action, the Attorney-General sought civil damages and an injunction to compel Con Ed to comply with provisions of the Right to Know Law (Public Health Law art 48; Labor Law art 28), entitling employees to information and training regarding toxic substances to which they are exposed at the workplace.
Con Ed’s motion to dismiss is two-pronged. It challenges the Attorney-General’s authority to bring suit under Labor Law § 882, in the absence of a prior investigation and determination by the Department of Labor. It also argues, in the alternative, for dismissal on the grounds that the Department of Labor and the Department of Health share primary jurisdiction over Right to Know Law enforcement, regulations and standards. Defendant’s motion is denied as to both counts.
The Right to Know Law was passed in 1980, in recognition "that there exists a danger to the health of employees and their families throughout the state because of hazardous exposure to toxic substances encountered during the course and scope of employment.” (Declaration of purpose, L 1980, ch 551, § 1.) The New York legislation is among the most stringent State standards. (Schroeder & Shapiro, Responses to Occupational Disease: The Role of Markets, Regulation and Information, 72 Geo LJ 1231 [1984].) It requires notice to employees, provision of information regarding effects of exposure, symptoms, emergency treatment and proper conditions for safe use of toxic substances. The statute mandates creation of training programs for employees and for maintenance of medical records for a 40-year period for employees who handle such substances.
On December 18, 1981, three Con Ed employees wrote to the company’s director of safety services for information regarding Con Ed’s use of polychlorinated biphenyls (PCBs). One of the employees had heard contradictory statements on PCB use from company spokesmen. Fearing exposure to PCBs in chemical residues present in Con Ed’s boilers after burning, the employees sought information under the Right to Know Law. Labor Law § 876 (7) mandates the employer to provide requested information within 72 hours.
On January 18, 1982, the employees informed the Attorney-General’s office that they had received no information from Con Ed. The Attorney-General filed suit to order Con Ed to *59 comply with various provisions of the law, on training and information regarding PCBs. After Con Ed responded to the employees’ request, plaintiffs amended their complaint to allege that the employer’s response was unsatisfactory, and to add other toxic substances to the original charges that Con Ed had failed to post notices or train its workers in violation of the Right to Know Law.
The Right to Know Law provides for the promulgation of regulations by both the Department of Labor and the Department of Health. While "The industrial commissioner may promulgate such regulations as he shall consider necessary and proper to effectuate the purposes and provisions of this article” (Labor Law § 881; emphasis added), the duty upon the Commissioner of Health is mandatory: he "shall promulgate rules and regulations and take all other actions necessary for the effective implementation of this article.” (Public Health Law § 4802 [3].) However, the only regulations promulgated to date are the Department of Health regulations on disclosure of information on trade secrets (10 NYCRR part 72). Annual reports of the Department of Labor, and an affidavit from an official of the Department of Health, indicate that although some departmental discussion of policy formulation has taken place, no over-all regulations are imminent.
At issue is how the Right to Know Law is to be enforced. The statute provides a detailed administrative agency investigative and determination procedure to enforce the section 880 guarantee of employees’ rights, in the face of employer discrimination. However, the Right to Know Law contains no over-all agency enforcement scheme. Nor have regulations been issued to fill that gap.
The statute does provide for enforcement by the Attorney-General. Labor Law § 822 (1) provides: "1. Civil penalty. Any employer who fails to comply with the provisions of this article shall be liable for a civil penalty not to exceed ten thousand dollars in addition to any other damages for which an employer may be liable pursuant to any other provision of law. The attorney general may bring an action in the supreme court against any person or persons alleged to have violated the provisions of this article. In any such action the supreme court shall have jurisdiction to restrain violations of this article and to levy appropriate penalties.” (Emphasis added.)
Con Ed views this statutory language as ambiguous, needing to be read in the light of the other enforcement provision of *60 the law (Labor Law § 880 [4]). Con Ed argues: that the statutory language "alleged to have violated” means charged after due investigation by the Department of Labor; that a procedure is laid out in detail in section 880 (4), which provides for victims of discrimination by employers to file complaints with the Commissioner of Labor; that upon investigation and determination that there has been discrimination, the Commissioner then requests the Attorney-General to bring an action. No such modification can be read into the plain language of section 882 (1).
The wording of the statute is plain. More elaborate implications, not contained in the facial language, should not be read into the statute. "[WJhere the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used”. (Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205, 208.)
When the Legislature intended to detail an investigative procedure for the Commissioner of Labor, it did so quite plainly. In the absence of such elaboration, section 882 (1) grants the Attorney-General authority to sue without restraint. Where the Legislature creates specific enforcement provisions, "we will not lightly assume an unexpressed intention to create additional ones.” (Fox v Reich & Tang, 692 F2d 250, 255 [2d Cir 1982].)
When statutory language is clear, other contradictory evidence of legislative intent is inappropriate (Civil Serv. Employees Assn. v County of Oneida, 78 AD2d 1004 [1980]). Con Ed proffers affidavits by legislators and their aides, stating that section 882 was premised on Department of Labor investigation. Such pronouncements cannot modify a plain statutory mandate. "[P]ostenactment statements or testimony by an individual legislator, even a sponsor, is irrelevant”. (Supra, at p 1005.)
Con Ed has also failed to establish grounds for dismissal based on the primary jurisdiction doctrine.
Primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes to play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.” (United States *61 v Western Pac. R. R. Co., 352 US 59, 64; citing Tank Car Corp. v Terminal Co., 308 US 422, 433.)
Section 882 (1) specifically notes that "the supreme court shall have jurisdiction to restrain violations of this article and to levy appropriate penalties.” In this context the primary jurisdiction doctrine means the discretionary ceding of jurisdiction by the court to an administrative agency in the interests of efficiency, consistency of application of agency rules, and the argument relied upon by Con Ed here — technical expertise. A Federal doctrine in origin, primary jurisdiction has been frequently applied by New York courts; however, "courts need not bow to the primary jurisdiction of the administrative body.” (Board of Educ. v Harris, 622 F2d 599, 607 [2d Cir 1979].)
For example, courts have refused to defer primary jurisdiction to administrative agencies where both a Donnelly Act antitrust prosecution and milk industry regulations, of the Commissioner of Agriculture and Markets, covered unfair and deceptive comparison. (People v Elmhurst Milk & Cream Co., 116 Misc 2d 140 [1982].) There the court stated that "until and unless the Commissioner of Agriculture and Markets promulgates rules specifying what conduct constitutes an unfair method of competition”, the administrative and judicial enforcement "cannot possibly conflict”. (Supra, at p 149.) The Elmhurst Milk court followed the reasoning in People v Dairylea Coop. (114 Misc 2d 421). There the court refused to dismiss a Donnelly Act indictment and found that the Commissioner of Agriculture and Markets, although empowered to define and specify prohibited conduct, had not done so, and that "the promulgation of the very rules and regulations under these sections was a precondition to any enforcement action”. (Supra, at p 429.) As is the case here, the court there went on to say "the administrative area potentially relevant to this case is presently in vacuo. ” (Supra, at p 430.)
Here there is no issue of "protection of the integrity of a regulatory scheme”, so as to trigger primary jurisdiction abstention. (United States v Philadelphia Natl. Bank, 374 US 321, 353.) Moreover, no Department of Labor proceedings appear to have been conducted to enforce the Right to Know Law, with the exception of the discrimination-related investigation resulting in New York v Resin Optics (Sup Ct, Erie County, No. H35042, Aug. 14, 1984). Several complaints have been resolved by departmental action on a case-by-case basis. Attorney-General action procured the consent judgment re *62 garding Wegman’s Food Mkt. (Sup Ct, Monroe County, index No. 8404/84), and arrived at a detailed January 25, 1985 agreement with Cornell University, regarding implementation of toxic substances training and notice programs.
Con Edison argues that primary jurisdiction lies with the Department of Health and Labor because of the technical complexity of the definitions and standards at issue here. Con Edison points to the necessity of defining terms and setting standards regarding thousands of toxic substances. It is true that before a court decides to apply the doctrine of primary jurisdiction it must consider the need for specialized expertise and that uniformity of result will be helpful to resolve the issues before it (see, United States v Western Pac. R. R. Co., 352 US 59, 62-65 [1956], supra). However, where, as here, the relevant administrative agency has failed to perform and some very concrete definitions, including that of "toxic substance,” have been provided by the Right to Know Law itself (Labor Law § 875 [2]), then the court itself should act, as it is empowered to do so here; notwithstanding that administrative guidelines might be preferable. To do otherwise would leave in limbo the very employees the Legislature clearly intended to be informed and trained concerning toxic substances in the workplace.